Filed 8/7/14  P. v. Naranjo CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LAWRENCE NARANJO,<br><br>    Defendant and Appellant. | D064726<br><br><br><br>(Super. Ct. No. SCE327329) |

APPEAL from a judgment of the Superior Court of San Diego County, William J. McGrath, Jr., Judge.  Affirmed.

Sheila O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Scott Taylor and Stacy Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Lawrence Naranjo of receiving stolen property (Pen. Code,[1] § 496, subd. (d)).  Naranjo admitted a prior serious/violent felony conviction (§ 667, subds. (b)-(i)) and three prison priors (§ 667.5, subd. (b)).  The court sentenced Naranjo to a determinate term of five years in prison.

Naranjo appeals contending the trial court erred in denying his motion under section 1118.1 for a judgment of acquittal and that in any event there was not sufficient evidence to support the conviction.  We will reject both contentions and affirm.

STATEMENT OF FACTS

On the morning of January 28, 2013, Elvira Garcia discovered her red 1987 Chevrolet pickup truck was missing.  There was only one set of keys for the truck and they were still at Ms. Garcia's house.  She reported the loss to the Sheriff.

At around 11:00 a.m., on January 29, 2013, San Diego Sheriff's Deputy Winferd Vermillion observed the stolen truck parked outside a residence at 659 Sacramento Avenue.  He observed Naranjo get out of the driver's seat of the truck and walk toward the house.

Vermillion called for assistance and continued to observe the truck.  While he was waiting, Vermillion saw Naranjo return to the truck and get into the driver's seat.  Vermillion then approached the truck, drew his firearm and ordered Naranjo to get out of the truck and put his hands in the air.  Naranjo did not immediately comply.

---

[1]     All further statutory references are to the Penal Code unless otherwise specified.

2

Vermillion continued to order Naranjo to put his hands in the air and to get down on the ground. Naranjo turned in circles and the deputy thought he might be looking to run. However, Deputy Torres arrived at that moment and blocked any escape path. Naranjo finally got down on the ground.

A search of the truck revealed a number of Naranjo's belongings, including his wallet. A set of keys was found but when the keys were shown to Ms. Garcia she said they were not for her truck. When Deputy Torres examined the truck ignition he discovered the truck could be started without keys, which Torres said was not uncommon for older vehicles.

During the investigation on January 29, Deputy Vermillion interviewed Joseph Pollard who lived at 659 Sacramento Street. Pollard told Vermillion that he had seen Naranjo, who he referred to as "Lawrence" driving the truck at around 4:00 p.m. the day before.

When Pollard testified he said he had met Naranjo on January 28, but denied ever seeing Naranjo driving the stolen truck. Pollard denied seeing the truck until January 29 when the deputy pointed it out to him. Pollard testified the deputy must have misunderstood him when they discussed his observations. He said he was half asleep when he talked to authorities and did not remember what he said.

**Defense**

Naranjo testified and denied ever driving the truck. He testified that on the morning of January 29, a man named "John" picked him up at a bus stop in the stolen truck and drove him to the Sacramento Street address. Naranjo did not ask John to pick

3

him up, did not know how John came to be at the bus stop, and did not know John's last name, or how to contact him. Naranjo did specifically recall that John had the keys to the truck when he picked him up, but could not remember much else because he was "out of it."

Naranjo explained entering the driver's side of the truck as observed by Vermillion. Naranjo realized John had taken his money and went to the truck to search through his belongings. He said he used a key to open the door. It was at that point when Vermillion approached him with gun drawn, screaming orders at him.

Naranjo explained his entry through the driver's side of the truck was part of his effort to retrieve his belongings, which he variously said were in the middle of the seat or "all over the truck" or that he could not remember.

DISCUSSION

Although Naranjo divides the issue into two parts, his essential challenge to his conviction is that there is not sufficient evidence to support his conviction. He argues that the trial court should have granted his motion for acquittal at the close of the prosecution's case. If the court had done so, Naranjo would not have been required to testify, which we agree was not likely helpful to his defense. In any event, he contends that even if we consider his highly doubtful testimony, there is not enough evidence to establish he had knowledge of the stolen nature of the property. We will find the evidence sufficient at the close of the prosecution to warrant denial of the motion to acquit. Having said that, we are well satisfied the totality of the evidence supports the jury's finding that Naranjo knew the truck was stolen and that he had possession of it.

4

## A. Standard of Review

When we review a claim of insufficient evidence to support a conviction we apply the familiar substantial evidence standard of review. Under that standard, we review the entire record in the light most favorable to the judgment. We draw all reasonable inferences in favor of the trial court decision. However, we do not reweigh the evidence nor do we make credibility decisions. The question we must resolve is whether there is sufficient, substantial evidence in the record from which a reasonable jury could find that each element of the offense was proved beyond a reasonable doubt. (*People v. Maury* (2003) 30 Cal.4th 342, 396; *People v. Johnson* (1980) 26 Cal.3d 557, 578.)

## B. Receiving Stolen Property

In order to convict a person of receiving stolen property (§ 496, subd. (d)), the prosecution must prove, beyond a reasonable doubt, that (1) the property was stolen; (2) the defendant knew it was stolen; and (3) that the defendant possessed the property. (*People v. Land* (1994) 30 Cal.App.4th 220, 223.)

Proof of the required mental state can be proved by direct evidence, but is often shown by circumstantial evidence. (*People v. Alvarado* (1982) 133 Cal.App.3d 1003, 1019.) Possession of recently stolen property raises a strong inference of knowledge of its stolen nature. Such strong inference requires only "slight" additional corroboration to support a guilty verdict. (*People v. Anderson* (1989) 210 Cal.App.3d 414, 421.)

The parties in this case do not disagree as to the applicable law. Rather they dispute the application of the facts to the law. However, as we will explain, we do not

5

believe Naranjo is accurately applying either the substantial evidence standard or the requirement of "slight" corroboration.

## C.  Denial of the Motion to Acquit

Section 1118.1 provides:  "In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal.  If such a motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without first having reserved that right."

The trial court in applying the statute follows essentially the same standard of review as that used on appeal.  Assuming the jury believes the prosecution evidence, the court must determine if such evidence is substantial and could be found to prove each element of the offense beyond a reasonable doubt.  (*People v. Cole* (2004) 33 Cal.4th 1158, 1212-1213; *People v. Land, supra*, 30 Cal.App.4th at p. 223.)

In this case, the jury had before it the testimony of Deputy Vermillion which placed Naranjo in the driver's seat of the truck when he was first observed.  Vermillion saw Naranjo come back to the truck and enter through the driver's side door.  Naranjo had a quantity of his belongings inside the truck which had been stolen only the day before.

Thus it is clear Naranjo could reasonably have been found to be in possession of the recently stolen truck.  When confronted by the deputies, Naranjo's movements were at

6

least unusual and the jury could have considered them to be evasive, but blocked by Deputy Torres.

Next, the jury could have considered the testimony of Joseph Pollard and the contradicting evidence from Deputy Vermillion. Certainly Pollard appears to be of doubtful credibility. However, Vermillion testified that Pollard said he had observed Naranjo driving the truck on the afternoon of January 28. Pollard denied the observation, and perhaps denied making the statement to Vermillion, since he testified he did not remember what he said when he was interviewed. The jury was not required to believe any or all of Pollard's testimony. Pollard's prior inconsistent statements were admissible to prove the truth of such statements. (Evid. Code, § 1235.) Thus, if the jury believed Vermillion and disbelieved Pollard's in-court testimony, it could find that Naranjo was seen driving the stolen truck mere hours after it had been reported stolen.

In short, the trial court viewed the evidence in light of what the jury could reasonably believe from the testimony before it. The trial court's analysis and decision were sound. We are satisfied that the jury could have properly found Naranjo guilty based solely on the evidence presented in the prosecution's case-in-chief.

### D. Sufficiency of the Evidence

The only change in the nature of the evidence after the trial court denied the motion to acquit was that Naranjo testified. We recognize that he denied both possession of the truck and that he had any knowledge the truck was stolen. Under Naranjo's version of the events he was merely a passenger in the truck when John provided him an

7

unsolicited ride from a bus stop to the Sacramento Street house.  However, the jury was not required to believe his version of the events.

Naranjo was impeached at trial and his testimony was both internally inconsistent and at odds with other evidence in the case.  Reasonable jurors could have found all or portions of Naranjo's testimony not to be credible.  In sum, there was sufficient evidence to support a conviction before Naranjo testified and nothing in his testimony required reasonable jurors to reject the prosecution's evidence.  The jury's verdict is well supported by substantial evidence.

DISPOSITION

The judgment is affirmed.


HUFFMAN, J.

WE CONCUR:


BENKE, Acting P. J.


McINTYRE, J.